Allen, J.
I am of opinion, that the appellees have not shewn themselves entitled to the relief they asked, either in respect to their claim to the ownership of *551 Harrison’s ferry, or in respect to their bridge. Hot as proprietors of Harrison’s ferry, 1. because theyhave adduced no evidence of title to it; 2. because it had been for a long period disused, and according to their own shewing disused by themselves; and 8. because there is no proof, that the defendants have established another ferry at which the public was accommodated generally; the evidence only shewing that they crossed the river themselves in their own boat, which, I conceive, it would have been lawful for them to do, even though the public ferry had been in full use. Hor as proprietors of the bridge; because it is not clearly shewn that the ferry and the bridge are intend to accommodate the same line of travel and transportation, though probably that is the fact; and because the evidence proves that the defendants kept a boat for their own accommodation only, and there is no proof that it was intended for, or that it was used by, the public. For these reasons I think the decree should be reversed, and the injunction dissolved; without expressing any opinion as to the right of a ferry-owner to restrain by injunction, the erection of a new ferry, at which toll may or may not be taken, or as to the right to claim protection by an injunction for a company incorporated to build a bridge or .construct a road, or other persons enjoying statute privileges, in the enjoyment of their privileges, against invasion or irraparable injury by the establishment, by individuals, of other means of communication, whether of the same kind or to accomplish the same object.
Stanard and Oabell, J. concurred.
Brooke, J.
I think the appellees have no claim to the relief they asked. They have not shewn themselves entitled to the ferry rights; and if they had, those rights have not been invaded by the appellants. *552 No one is forbidden to pass a river, or to establish a paggage aeross for others, if they take no toll or reward. The statutes concerning ferries, 2 Rev. Code, eh. 237, § 21, p. 260, provides that “if any other per-8011 w^atsoever shall, for reward, set a person or persons over any river or creek whereon public ferries are appointed, he or she so offending shall forfeit and pay twenty dollars for every such offence,” &c. and this is the security provided for the owners of public ferries against any violation of their rights. Neither have the rights of the bridge company been violated. Their charter does not give them the exclusive right to transport passengers or property across the river. It gives them a right to demand and receive tolls for the use of their bridge: and their best security against the violation of that right consists in the superior convenience of the bridge for passage or transportation, which will prevent any injurious competition.
Tucker, P.
I am clearly of opinion that the decree should be reversed. The appellees rest their com- , plaint, and ask relief in equity, upon two separate and distinct rights and franchises: 1. Upon their rights as ferry owners; and 2. Upon their chartered rights as a bridge company.
As to the first: it will not be necessary to rest my opinion of their pretensions, either upon the ground of jurisdiction, or upon the supposed forfeiture of their franchise. That, it is admitted, can only be declared on a quo warranto, or some other similar proceeding. But whether the franchise be forfeited or not, it has been confessedly disused; and, considering the question as entirely distinct from and without reference to the bridge, it may be asked, whether the owner of a ferry, who has altogether abandoned the use of it, and who has entirely cast off from himself the duties incident to his privileges, can come into a court of equity, *553 •with any title to its countenance, aid or protection ? His privileges are given as compensation for the dufies and burdens imposed upon him; and when he has •utterly disused his ferry, and no longer performs the consideration, what claim can he have in equity to the •enforcement of exclusive rights? Hay more: as from ■disuse of the ferry he can make no profit from it, any violation of his franchise, if it be injuria, at least is not damnum,. "Will a court of equity, then, which only interferes upon the principle of preventing irreparable mischief, interfere where the party sustains no mischief at all? It may, indeed, well be doubted, whether even an action at law could be sustained by a ferry owner, who had abandoned and put down his own ferry. See 2 Rev. Code, ch. 237, § 23, 24, p. 260. It may well be questioned, whether damages could be •demanded of a j ury, for the illegal use of that which the party himself would not use? And whéther an action for a violation of the franchise, might not be ■successfully defended by shelving that it was disused or abandoned? "What profits it yields, and what repair it is in, are proper for the consideration of a jury, to found their damages upon. Blisset v. Hart, Willes, 512, note (a). But on these questions I shall express .no decided opinion, as in dissolving the injunction, I am willing to do it without prejudice to any action at law the company may be advised to bring.
2ndly. The case of the appellees is not stronger under their chartered rights. The bridge company have no exclusive privilege for the transportation of persons or property over J ames river at Cartersville. The legislature neither gave nor contemplated such a privilege. Bor, when the law passed, Harrison’s ferry was in full operation; and thus it is clear, that the right to pass the river, without going over the bridge, was left unimpaired, to all the people of the commonwealth. There was no restraint upon the erection even of a new *554 ferry, except the franchise of Harrison. There was no -n company to prevent any person from ferrying the river whom Harrison would permit to do so; they might even have received tolls, if he chose to permit them; for the charter of the bridge company imposed no restraint upon any one. Much less can we imply from the charter an inhibition upon one or more neighbours to unite in building a boat for the transportation of themselves, their families and property, without charging toll to any one. It cannot be denied, I think, that the charter of the bridge company does not operate to prevent any riparian owner from passing on his horse or in his boat, or any traveller from fording the river. Hor do I think, that, by any fair construction, even a ferry owner (whose privileges are certainly more extensive) could gainsay such a right, or even the right of transporting without toll those who may desire to pass the river. His rights are sufficiently guarantied and protected by the assurance, that self-interest would forbid any person from setting up a free ferry, with all its burdens and expenses, to his detriment. Such seems, indeed, to be the spirit of the general statute, which enacts a penalty of twenty dollars for each offence of transportation for reward, but not otherwise. Whether any other recovery can be had than this, which is given by the statute establishing public ferries, may be a matter of grave consideration; but, be that as it may, it would seem fairly to be inferred from the clause referred to, that transportation without reward, was not designed to-be made penal, where there is no evidence of fraudulent intent to destroy the franchise.
From this view of the rights of the appellees, whether as owners of the ferry or of the bridge, I am well satisfied, that, in neither character, are they entitled to the aid of a Court of Equity against the appellants. Ho toll appears to have been taken, and they say they *555 gave orders that none should he demanded. The extent of the grievance is, that a few persons in the neighborhood have kept a boat for their own convenieuce, without proof of any design to put down the bridge. If such design should manifest itself, or if they should demand toll, or establish a free ferry for all comers and goers, it will be competent to the bridge company to institute their action at law to try the right. The pretext of going into equity to prevent multiplicity of actions is without foundation; since there will be need of as many suits in equity as at law, to put a stop to the proceeding; for the injunction will only bind those who are parties to the suit.
Decree reversed, and injunction dissolved.